IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PAUL SYLVA,

Plaintiff,

v.                                    Civil No. 04-1646 (JAG)

CULEBRA DIVE SHOP, et al.,

Defendants.

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

On July 12, 2004, plaintiff Paul Sylva filed an Amended Complaint against Culebra Dive Shop (the "Dive Shop"), its owners Richard Cantwell, Luz Rivera Cantwell, the Conjugal Partnership between them (jointly referred to as "the Cantwells"), its employees James Hamerick and Jeff Proctor, and insurance company ING Groep NV, among other co-defendants, for damages caused for the wrongful death of his wife, Linda Marie Wieditz, while scuba diving on a trip conducted by the Dive Center off the island of Culebra, Puerto Rico. (Docket No. 3). The case was brought under diversity jurisdiction. 28 U.S.C.A. § 1391(a).

On September 27, 2004, the Dive Shop and the Cantwells filed a Motion for Summary Judgment, Memorandum in Support thereof and Statement of Uncontested Material Facts on two (2) grounds, namely: 1) plaintiff's claims are barred by the execution of a Waiver of Responsibility signed by Mrs. Wieditz which is enforceable in this case; and 2) Mrs. Wieditz expressly and contractually assumed the risks of the scuba diving excursion by executing the Waiver of Responsibility and consequently, plaintiff is barred as a matter of law from pursuing this claim. (Docket No. 16).

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 2

On October 22, 2004, plaintiff filed his Opposition to the Dive Shop and the Cantwells' Motion for Summary Judgment moving the Court to deny the summary judgment on the following grounds, to wit: 1) there is a genuine issue of fact as to whether the Waiver of Responsibility was in effect the day Mrs. Wieditz died because she executed the same twenty (20) days prior to her tragic death on July 16, 2003; and 2) even if the Waiver of Responsibility was in effect at the time of the death, the same would only bar plaintiff's cause of action as an heir of Mrs. Wieditz and none of the other causes of action. (Docket No. 24).

On October 25, 2004, co-defendant ING filed a Motion for Summary Judgment, Memorandum of Law in Support thereof and Statement of Uncontested Facts seeking summary judgment in its favor on the following grounds, to wit: 1) the policy excludes coverage to persons participating in any diving activity while in the water; and 2) the policy does not afford coverage due to the vessel's alleged unseaworthy condition. (Docket No. 25, 26 and 27).

On November 13, 2004, the Dive Shop and the Cantwells filed a Reply to Plaintiff's Opposition to the Dive Shop and the Cantwells' Motion for Summary Judgment (Docket No. 44). On November 18, 2004, plaintiff filed a Sur-reply to the Reply. (Docket No. 45). Neither Plaintiff nor the Dive Shop requested prior leave from the Court to file a Reply (Docket No. 44) or a Sur-reply (Docket No. 45), as required by Local Rule 7.1(c). Accordingly, it is recommended that both Docket No. 44 and Docket No. 45 **BE STRICKEN** from the record and will not be considered in rendering this report and recommendation.

On December 3, 2004, plaintiff filed his Response to ING's Motion for Summary Judgment in which plaintiff agrees to voluntarily dismiss the Fourth Cause of Action and claims

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 3

the diving exclusion does not bar policy coverage for him.   (Docket No. 46).

On December 14, 2005, ING filed a Reply to Plaintiff's Opposition to Motion for Summary Judgment, after requesting proper leave of Court to file the same in excess of ten (10) pages and being granted leave by the Court.  (Docket No. 47, 52, 53 and 54).

On December 16, 2004, plaintiff filed a Sur-Reply to ING's Reply, without requesting prior leave of Court to file same, as required by Local Rule 7.1(c).  (Docket No. 55).  Accordingly, it is also recommended that Docket No. 55  **BE STRICKEN** from the record and will not be considered in rendering this report and recommendation.

On June 20, 2005, both requests for summary judgment filed by defendants and related pleadings were referred to the undersigned for report and recommendation.  (Docket No. 104).

## II. FACTUAL BACKGROUND

**A.    Factual Background of Events.**[1]

On June 26, 2003, Mrs. Linda Marie Wieditz and plaintiff signed each a Waiver of Responsibility provided by the Culebra Dive Shop. Mrs. Wieditz knew the risks inherent in scuba diving and participated in the involved activity with full knowledge, comprehension and appreciation of the risks involved.

On July 16, 2003, Mrs. Wieditz contracted with Culebra Dive Shop to participate in an excursion.  Culebra Dive Shop agreed to furnish maritime transportation on board the M/V

---

[1] Defendants have not challenged the veracity of plaintiff's factual allegations for purposes of the requests for summary judgment.  (Docket No.16, p. 4 and Docket No. 26, p. 3).  Thus, this Factual Background of Events is based on the allegations contained in the Amended Complaint  (Docket No. 3), on the Dive Shop and the Cantwells' Statement of Uncontested Facts 2 to 9 (Docket No. 16) which have been admitted by plaintiff (Docket No. 24); and on ING's Statement of Uncontested Material Facts 1 to 5 (Docket No. 27) which have been admitted by plaintiff.  (Docket No. 46).

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 4

SOLUZION as well as diving instructors.  At the time, Mrs. Wieditz had over fifty (50) dives and was employed as a teacher by the Rockport Public School system.

On or about 10:15 AM on July 16, 2003, the trip took off from Culebra Island on board the M/V SOLUZION with six (6) passengers, including Mrs. Wieditz and two (2) crew members. On or about 11:00 AM, they arrived at Soldiers' Point in Culebra Island, which was an improvised destination, because engine problems of the vessel forced the crew members to refrain from going to their original destination, Carlos Rosario Reef System.

At this time, one of the instructors remained in shallow waters close to the beach with a passenger, and the other instructor went out farther off-shore in the boat with the remaining passengers, dropping anchor in 30-foot deep waters.  The passengers were then allowed to enter the water.  Almost immediately thereafter, co-defendant Jeff Proctor noticed that sea currents were too strong and ordered the passengers back into the boat.  Mrs. Wieditz was last seen trying to swim her way back to the vessel.  However, before she arrived, the crewman on board raised anchor and moved the vessel to tow other drifting swimmers.  Thereafter, Mrs. Wieditz could not be found.  A visual search was negative.

Then after, the crewman on board returned to the beach to pick up his fellow crewman and the passenger he was with.  Both crewmen and the remaining passengers performed a fruitless search and rescue operation.

On or about 2:15 PM, after Mrs. Wieditz had been missing for over two (2) hours, the crew members called state and federal authorities for assistance.  Within minutes, the authorities responded with boats and divers.  Search and rescue operations to find Mrs. Wieditz were carried

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 5

out through July 19, 2003 with negative results.  Mrs. Wieditz is presumed dead and lost at sea.

Her body was never found.

**B.    Factual Background of ING's Insurance Policy.[2]**

ING was and still is an insurance company organized and existing under the laws of the

Netherlands with its office and principal place of business located in the Netherlands.  TL Dallas

(Special Risks) Ltd. acted as a marine underwriting agent for and on behalf of ING in the

procurement of insurance for the vessel SOLUZION (a/k/a SOLUTION).   The M/V SOLUZION

(a/k/a SOLUTION) was owned and operated by Culebra Dive Shop.

TL Dallas, in its capacity as marine underwriting agent for ING issued Policy No.

200/658/39984 ("the Policy") in favor of Culebra Dive Shop c/o Richard Cantwell.  The Policy's

period of coverage was from July 22, 2002 00.01 LST to July 22, 2003 00.01 LST.  The terms

and conditions of the Policy are as provided in form TLD/3/COM.

The Policy provides at the definitions section that the term "Divers" refers to "any person

using underwater artificial breathing apparatus, and/or submersible mechanical or electrical

device including, but not limited to, Submarines, Diving Bells and/or Diving Suits."

The Policy provides coverage for third party liability claims.  The Policy provides at

Section 4(k) that third party liability coverage is expressly excluded for "[l]iability to divers

operating from the scheduled vessel, from the time they commence to leave the scheduled vessel,

---

[2] ING filed a Statement of Uncontested Material Facts in which Statements 6 to 29 deal with ING's
insurance policy applicable to this case.  (Docket No. 27).  In the Counter Statement of Uncontested Facts,
plaintiff admits all of the uncontested material facts identified by ING.  (Docket No. 46).  Thus, this Factual
Background of ING's Insurance Policy includes ING's proposed Statements of Uncontested Material Facts 6 to
29.

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 6

until they are safely back on board."

The Policy's third party liability coverage includes coverage for Commercial Passenger Liability. The Policy provides that Commercial Passenger Liability coverage is expressly excluded for "[l]iability to divers operating from the scheduled vessel, from the time they commence to leave the scheduled vessel, until they are safely back on board." The Policy provides that the "insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us."

The Policy's coverage includes a Recreational Dive Boat General Endorsement and Limited Passenger Liability Extension. The Policy's Recreational Dive Boat General Endorsement expressly provides, in bold type font, that "**[p]ersons participating in any Diving activity are covered only as passengers and only while aboard the Vessel, or the Vessel's diving platform or the Vessel's boarding ladder.**" (Emphasis in original). The Policy's Recreational Dive Boat General Endorsement provides that "[w]e do not provide coverage for any person for Bodily Injury, Illness, Disease, Death or Property Damage while in the water in connection with any diving activity, or as a consequence of any diving activity." The Policy's Recreational Dive Boat General Endorsement provides that "[w]e do not provide coverage for Bodily Injury, Illness, Disease, Death or Property Damage arising out of any sales, servicing or the use of Diving Equipment of any kind."

The Policy provides at the Definitions section that "seaworthy means fit for the scheduled vessel's intended purpose. Seaworthiness applies not to the physical condition of the Hull, but

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 7

to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For a vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use."

The Policy provides at the General Conditions and Warranties section that "[t]his insuring agreement does not cover any loss or damage caused by your failure to exercise due diligence properly to manage the scheduled vessel or maintain it in a seaworthy condition." The Policy provides at the General Conditions & Warranties section that "[i]t is warranted that covered persons must at all times comply with relevant statutes, laws, by-laws and U.S. Coast Guard and other regulations, governing the use of the vessel."

On January 27, 2004, Plaintiff's legal representative, Joseph Fratallone Martí, Esq., sent a letter to Ms. Bárbara Federico in which he states that "I write to you on behalf of Mr. Paul Sylva, widow of Linda Wieditz, who perished on July 16th , 2003 in the waters near Culebra, Puerto Rico, while scuba diving under the control and supervision of your insured Culebra Dive Shop."

Dive Master Jeffrey Proctor was an employee of Culebra Dive Shop in charge of the operation of the M/V SOLUZION during the course of events that led to the disappearance of Mrs. Linda Wieditz.

Dive Master Jeffrey Proctor submitted an Incident Report Form to the Professional Association of Diving Instructors ("PADI") in which he enclosed a "Summary of Incident" report were he stated that "Linda had her own personal dive gear" and that at the time he ordered the divers to return to the boat "[e]veryone at this time had their BC's inflated and were floating on

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 8

the surface."

In the Amended Complaint, Plaintiff alleges that Defendants were negligent, among other allegations of negligence, for "failing to have duly qualified personnel in charge of the vessel."

On September 23, 2004, counsel for ING provided Plaintiff's counsel with a certified copy of the Policy attached to an unsworn statement under penalty of perjury.

Plaintiff Sylva neither attended nor participated in Culebra Dive Shop's July 16, 2003 diving excursion where his wife Linda Wieditz perished.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir., 1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment,

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 9

could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir., 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir., 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir., 1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir., 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); *see also* Tew v. Chase Manhattan Bank, N.A., 728 F.Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'"). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving

party rests merely upon conclusory allegations, improbable inferences [or] unsupported

speculation." Ayala-Genera v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

## IV. ANALYSIS

### A.   Motion for Summary Judgment filed by the Dive Shop and the Cantwells.

The Motion for Summary Judgment filed by the Dive Shop and the Cantwells contends

plaintiff's claims are barred by the execution of a Waiver of Responsibility signed by Mrs. Wieditz

which is enforceable in this case; and Mrs. Wieditz expressly and contractually assumed the risks

of the scuba diving excursion by executing the Waiver of Responsibility. Consequently, these co-

defendants aver plaintiff is barred as a matter of law from pursuing this claim. (Docket No. 16).

In turn, plaintiff's Opposition alleges there is a genuine issue of fact as to whether the

Waiver of Responsibility was in effect on the date Mrs. Wieditz died because she executed the

same twenty (20) days prior to her tragic death on July 16, 2003; and even if the Waiver of

Responsibility was in effect at the time of the death, the same would only bar plaintiff's cause of

action as an heir of Mrs. Wieditz and none of the other causes of action. (Docket No. 24).

In assessing the validity of a waiver, courts almost universally consider the following: (1)

whether the person signing the waiver had informed consent; (2) whether the clause was

inconsistent with public policy; and (3) whether the clause constitutes an invalid adhesion

contract. Olivelli v. Sappo Corp., Inc., 225 F.Supp.2d 109, 116 (D.P.R. 2002); *see* Phyllis G.

Coleman, Scuba Diving Injuries: Causes, Remedies, and Defenses, 29 J. Mar. L. & Com. 519

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 11

(1988); <u>Murley v. Deep Explorers, Inc.</u>, 281 F.Supp. 2d 580 (E.D. N. Y. 2003).[3]

In the instant case, the Dive Shop and the Cantwells claim the Waiver is valid.  A review of the record shows this has not been challenged by plaintiff.  Thus, the validity of the Waiver is uncontested.  Nonetheless, what is at issue is whether the Waiver was in effect on July 16, 2003, the day Mrs. Wieditz went scuba diving and died, even though she signed the same twenty (20) days before on June 26, 2003.

The Dive Shop and the Cantwells aver the Waiver is valid and applied to the day Mrs. Wieditz died on July 16, 2003, even though the Waiver was signed on June 26, 2003.  The Waiver was signed in advanced and it remained in effect until Mrs. Wieditz in effect dove with the Dive Shop.  Thus, there is a valid Waiver which releases the Dive Shop from any liability and summary judgment in its favor is proper.

In turn, plaintiff claims the Waiver was only valid for June 26, 2003, the day in which it was signed.   Plaintiff alleges a person executing the waiver in question must reasonably have concluded the same was applicable only for one day.  In support of plaintiff's contention, he claims the Waiver asked some questions which indicate the waiver was only valid for one day, June 26, 2003, namely: "Last time you dove?"; "Number of dives since you have been certified?; "Have you taken any medication on the past 24 hours? If so, please list."; "Recent illness;

_____

[3] We note that both federal common waiver law and Puerto Rico waiver law test the same basic principles as cited above, to wit: (1) whether the parties intent was clear; and (2) whether the waiver is contrary to the law, the public interest, or the public order, or prejudicial to the interests of a third person. The court's underlying task in waiver cases is to determine whether the waiver is clear, conclusive, and unequivocal. <u>Olivelli</u>, 225 F.Supp.2d at 116; <i>see</i> <u>Chico v. Editorial Ponce, Inc.</u>, 101 D.P.R. 759, 778 (1973); <u>Cabrera v. Doval</u>, 76 P.R.R. 728, 731 (1954).

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 12

operations; medications taken; persistent cough; sinus trouble; headaches; ear trouble; and

pregnancy." Accordingly, plaintiff alleges this is an issue of fact which precludes summary

judgment.

Contractual interpretation is strictly a matter of Commonwealth Law where the contract

at issue was signed and concluded in Puerto Rico, and the parties did not choose otherwise.

Vélez Cajigas v. Order of St. Benedict, 115 F.Supp.2d 246, 250 (D.P.R. 2000). *See* Pritchard v.

Norton, 106 U.S. 124, 129-130, 1 S.Ct. 102, 27 L.Ed. 104 (1882) ("[W]hatever goes to the

substance of the obligation and affects the rights of the parties, as growing out of the contract

itself or inhering in it or attaching to it, is governed by the law of the contract.")

Article 1233 of the Puerto Rico Civil Code "determines the manner in which courts should

interpret contracts under dispute as to the meaning of their terms." Borschow Hosp. and Medical

Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996). Article 1233 of the Puerto

Rico Civil Code provides that when "the terms of a contract are clear and leave no doubt

as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."

31 L.P.R.A. §§ 3471. Nieves v. Intercontinental Life Ins. Co., 964 F.2d 60, 63 (1st Cir. 1992).

"For Article 1233 purposes, a term is considered 'clear' when it is sufficiently lucid to be

understood to have one particular meaning, without room for doubt." Hopgood v. Merrill Lynch,

Pierce, Fenner & Smith, 839 F.Supp. 98, 104 (D.P.R.1993) (citations omitted). If the meaning

of a contract's terms is sufficiently clear, "the court cannot dwell on the 'alleged' intent of the

parties at the time they entered into the contract." Vulcan Tools of Puerto Rico v. Makita U.S.A.

Inc., 23 F.3d 564, 567 (1st Cir. 1994); Jiménez v. Triple S. Inc., 154 F.Supp.2d 236, 238 (D.P.R.

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 13

2001).  However, the court subsequently clarified that "[t]he strict mandate of the cited art. 1233 obliges us to abide by the literal meaning of the terms of the contract when, as in the present case, they leave no doubt as to the intention of the contracting parties." Marina Ind. Inc. v. Brown Boveri Corp., 114 P.R. Dec. 64 (1983).   Thus, when the language is not clear, the intention of the contracting parties needs to be considered.

After a careful review of the Waiver of Responsibility in this case, we believe there is a material issue of fact of the intention of both parties when the Waiver was signed on June 26, 2003 as to when the waiver was applicable.  A reading of the Waiver shows it does not specifically state if it was only applicable for the day it was signed; or if it was applicable for another date and not the date it was signed; or if it was applicable for a period of time covering several days, weeks or months after the document was signed.  Moreover, there is no reference on the Waiver as to the number of dives it would be applicable to.  Thus, the waiver does not specifically indicate whether it was applicable for one dive or multiple dives.  Although there are some questions included in the Waiver which may imply the same was applicable for only the day of signature as argued by plaintiff, the matter is subject to interpretation and is not free of ambiguity.  Thus, it is not clear from the words of the Waiver whether it applied only for the date in which it was signed or for future dates.

Accordingly, we find the Waiver of responsibility is not clear as to when it was applicable and there is a material issue of fact as to this matter.  Thus, to solve this dispute we would need to dwell on the intention of the contracting parties which is a matter of fact for the trier of facts. Federal Deposit Ins. Corp. v. Rosenthal, 477 F.Supp. 1223, 1228 (E.D. Wis. 1979) (The scope

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 14

of a release, and the intention of the parties that the release shall cover particular claims, are for

the jury or other triers of the facts.).  Moreover, we note there is no evidence on the record as to

the intention of the contracting parties when the Waiver was signed as to when it would be

applicable.   Accordingly, summary judgment is not appropriate at this time.

In view of the foregoing, it is recommended the Motion for Summary Judgment filed by

the Dive Shop and the Cantwells be **DENIED** without prejudice.[4]

**B.    Motion for Summary Judgment filed by ING.**

Co-defendant ING contends in its Motion for Summary Judgment the Commercial Yacht

Insurance Policy ("the policy") issued to co-defendants the Dive Shop and the Cantwells for the

commercial diving vessel M/V SOLUZION does not provide coverage for the loss claimed by

plaintiff.  In sum, ING claims it is entitled to summary judgment in its favor because the policy

excludes coverage to persons participating in any diving activity while in the water from the time

the divers commence to leave the vessel until they are safely back on board ("the diving

exclusion").   In the alternative, ING contends the policy does not afford coverage due to the

vessel's alleged unseaworthy condition because the Dive Shop breached the policy's warranty

to maintain the M/V SOLUZION in a seaworthy condition at all times ("the seaworthiness

clause").  (Docket No. 25, 26 and 27).

In turn, plaintiff avers in his Response to ING's Motion for Summary Judgment the diving

---

[4] In light of our recommendation, we need not entertain at this time these co-defendants' claim --in support of its summary judgment request-- that Mrs. Wieditz expressly and contractually assumed the risks of the scuba diving excursion by executing the Waiver of Responsibility.

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 15

exclusion does not bar policy coverage for him because the policy exclusions bar coverage for claims made by the diver or his/her representative and plaintiff Sylva was not in a diving activity. Plaintiff alleges his claims are made in his personal capacity and not as an heir of Mrs. Wieditz or as a representative of her estate. Plaintiff recognizes ING's argument is applicable to the Fourth Cause of Action in which plaintiff makes a claim as heir of Mrs. Wieditz.  Accordingly, plaintiff agrees in his Opposition to a partial summary judgment in favor of ING as to said Fourth Cause of Action but all other causes of action remain and are not excluded because they were all brought in his personal capacity. Finally, plaintiff contends ING's argument of un-seaworthiness is unfounded. (Docket No. 46).

Consequently, ING claims in its Reply to the Opposition, the diving exclusion of the Policy is "risk" specific rather than "claimant" specific thereby precluding all claims brought by anyone related to or as a consequence of any diving activity.  (Docket No. 53).

The following facts related to the Policy at issue in this case are undisputed[5]:

ING issued the Commercial Yacht Insurance Policy No. 200/658/39984 to provide coverage for Culebra Dive Shop's third party liability as a result of the ownership or operation of the M/V SOLUZION.  *See* Docket No. 27, Statement of Material Uncontested Fact ("SMUF") Nos. 9 and 13; and Docket No. 46.  The Policy's third party liability coverage, also known as Coverage B, states: "[i]f a sum insured is shown under Section 'B' of the insuring agreement declaration page, we provide coverage for any sum or sums which you become legally liable to

---

[5] See Section II B and footnote number 2 above.

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 16

pay and shall pay as a result of ownership or operation of the scheduled vessel." *See* Docket

No. 27, Exhibit 3, p. 4.

The Policy provides at the definitions section the term "Divers" refers to "any person using

underwater artificial breathing apparatus, and/or submersible mechanical or electrical device

including, but not limited to, Submarines, Diving Bells and/or Diving Suits." *See* Docket No. 27,

SMUF No. 12.

The Policy provides coverage for third party liability claims.  The Policy provides at

Section 4(k) that third party liability coverage is expressly excluded for "[l]iability to divers

operating from the scheduled vessel, from the time they commence to leave the scheduled vessel,

until they are safely back on board." *See* Docket No. 27, SMUF Nos. 13 and 14.

The Policy's third party liability coverage includes coverage for Commercial Passenger

Liability. The Policy provides that Commercial Passenger Liability coverage is expressly excluded

for "[l]iability to divers operating from the scheduled vessel, from the time they commence to

leave the scheduled vessel, until they are safely back on board." *See* Docket No. 27, SMUF Nos.

15 and 16.

The Policy provides the "insuring agreement incorporates in full your application for

insurance and it constitutes the entire contract between us." *See* Docket No. 27, SMUF No. 17.

The Policy's coverage includes a Recreational Dive Boat General Endorsement and

Limited Passenger Liability Extension.   The Policy's Recreational Dive Boat General

Endorsement expressly provides, in bold type font, that "**[p]ersons participating in any**

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 17

**Diving activity are covered only as passengers and only while aboard the Vessel, or the Vessel's diving platform or the Vessel's boarding ladder.**" (Emphasis in original). *See* Docket No. 27, SMUF No. 19.

This endorsement also includes a list of exclusions. Specifically, the exclusions to the Policy's Recreational Dive Boat General Endorsement and Limited Passenger Liability Extension provides in part "A" that "[w]e do not provide coverage for any person for Bodily Injury, Illness, Disease, Death or Property Damage while in the water in connection with any diving activity, or as a consequence of any diving activity." In addition, it provides in part "B" that "[w]e do not provide coverage for Bodily Injury, Illness, Disease, Death or Property Damage arising out of any sales, servicing or the use of Diving Equipment of any kind." *See* Docket No. 27, SMUF Nos. 20 and 21.

Federal admiralty law governs the interpretation of these marine insurance policies, unless no established federal admiralty law exists, in which case state law applies. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 316-21, 75 S.Ct. 368, 371-74 (1955); Cargill, Inc. v. Commercial Union Ins. Co., 889 F.2d 174, 178 (8th Cir. 1989).

The Policy in question in this case is consonant with the above inasmuch it contains a "Choice of Law" clause in which it is indicated that "any dispute arising hereunder shall be adjudicated according to the well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 18

York."  Docket No. 27, Exhibit 2.

Since the issue under our consideration does not involve a doctrine of federal maritime law, Puerto Rico law governs the construction of ING's insurance policy in this case.  Under Puerto Rico law, the Insurance Code of Puerto Rico, 26 L.P.R.A. §§ 101, *et seq*., controls the interpretation of insurance contracts.  Jiménez v. Triple S. Inc., 154 F.Supp.2d 236, 238 (D.P.R. 2001); Meléndez Piñero v. Levitt & Sons, 129 D.P.R. 521 (1991). Article 11.250 of the Insurance Code of Puerto Rico provides that every insurance contract "shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any lawful rider, endorsement, or application attached and made a part of the policy." 26 L.P.R.A. § 1125. *See also* Puerto Rico Electric Power Authority v. Philipps, 645 F.Supp. 770, 772 (D.P.R.1986). When the Insurance Code of Puerto Rico does not provide an interpretive approach for a particular situation, the Civil Code is used as a supplemental source of law in interpreting the insurance contract. Puerto Rico Housing Bank v. Pagan Insurance Underwriters, 111 D.P.R. 1, 6 (1981); González v. John Hancock Mutual Life Insurance Co., 927 F.2d 659, 669 (1st Cir.1991). Article 1233 of the Puerto Rico Civil Code provides that when "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." 31 L.P.R.A. § 3471.  Vélez-Gómez v. SMA Life Assur. Co., 8 F.3d 873, 875 (1st Cir. 1993).

It is a well established doctrine in Puerto Rico that, when construing the terms of any contract, including an insurance policy contract, the language used shall be interpreted according to its common and general usage. *See* Morales Garay v. Roldan Coss, 110 P.R.Dec. 701 (1981);

Pagán Caraballo v. Silva, 122 P.R.Dec. 105 (1988); García Curbelo v. A.F.F., 127 D.P.R. 747

(1991); Marín v. American International Ins. Co., 137 D.P.R. 356 (1994).  Furthermore, such

treatment is also given to the exclusions contained within an insurance policy. Each exclusion has

to be clear and unambiguous and shall be interpreted in accordance with its function within the

policy. If "an exclusion clause is clear and unambiguous and applicable, then it does not afford

coverage despite whatever inferences may arise from the other clauses of the contract. Each

exclusion clause shall be read independently from the others and according to its functions in the

policy's general agreement. Such construction shall be seriatim, not accumulative." See Meléndez

Piñeiro, 129 D.P.R. at 521. It is also recognized in Puerto Rico that the exclusion clauses of an

insurance policy shall be interpreted restrictively, in such a way as to provide coverage to the

insured. Any ambiguity shall be resolved in favor of the insured. However, the doctrine does not

compel the exclusion clause to be construed in favor of the insured when such clause is clear and

unambiguous against the insured. See Marín, 137 D.P.R. at 356; In re Reinforced Earth, Co., 925

F.Supp. 913, 918 (D.P.R. 1996).

Applying the above principles, and after a careful reading and study of the Policy in

question in this case, we conclude its terms and conditions are clear and leave room to no doubt.

Thus, pursuant to Article 1233 of the Puerto Rico Civil Code, referenced above, when "the terms

of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal

sense of its stipulations shall be observed." 31 L.P.R.A. §§ 3471.  Accordingly, we need not dwell

on the 'alleged' intent of the parties at the time they entered into the contract." Vulcan Tools of

Puerto Rico, 23 F.3d at 567.   As such, we conclude that, based on a plain reading of the

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 20

uncontested language of the Policy at issue above mentioned, it is clear coverage to third party

liability to divers is clearly and unambiguously excluded by the Policy from the time the divers

commence to leave the vessel until they are safely back on board.  See Sphere Drake Insurance

v. Fun Charters, 1997 WL 1065503, 6 (D. Hawaii 1997).

We need now to apply the clear language of the Policy to the facts of this case and

determine whether the incident at issue is covered under the Policy and whether plaintiff may

recover damages under the policy.

A review of the record in this case shows the damages claimed by plaintiff are based on

the loss of his wife while she was in a scuba diving excursion in Culebra, Puerto Rico.  Docket

No. 3.  The undisputed material facts in this case as narrated in the Amended Complaint

demonstrate Mrs. Wieditz was last seen trying to swim her way back to the vessel.  However,

before she arrived, the crewman on board raised anchor without due care moved the vessel

towards two drifting swimmers.  Thereafter, Mrs. Wieditz could not be found.  A visual search was

negative.  Mrs. Wieditz corpse was never found. Docket No. 3, ¶ 17; and Docket No. 27, SMUF

# 4 and #5.

In addition to the allegations of the Amended Complaint, ING has submitted other

documents in support of its summary judgment request which also show Mrs. Wieditz died while

participating in a diving excursion.  Among these documents there is a letter from plaintiff's

counsel dated January 27, 2004 in which he indicates: "I write to you on behalf of Mr. Paul

Sylva, widow of Linda Wieditz, who perished on July 16th, 2003 in the waters of Culebra, Puerto

Rico, while scuba diving under the control and supervision of your insured Culebra Dive Shop."

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 21

Docket No. 27, SMUF #22.  Furthermore, pursuant to the "Incident Report" drafted by dive

master Jeffrey Proctor, "Linda had her own personal dive gear" and at the time he ordered the

divers to return to the boat "everyone at this time had their BC's[6] inflated."  Docket No. 27,

SMUF # 27.  These documents are uncontested.

As previously mentioned, the Policy in this case clearly and unambiguously excludes

coverage to persons using any kind of diving equipment or for persons in the water in connection

to any diving activity.  Docket No. 27, SMUFs 12, 14, 16, 19, 20 and 21.  In light of the

undisputed facts in this case, which show Mrs. Wieditz died while in the water participating in a

diving excursion, and pursuant to the plain language of the Policy, the incident is excluded from

coverage under the Policy.

Nonetheless, plaintiff argues in his Opposition to the Motion for Summary Judgment that,

since he was not a diver himself, he may recover his damages under the Policy.  This argument

is unconvincing.

As previously mentioned, exclusion "A" of the Policy's Recreational Dive Boat General

Endorsement provides: "[w]e do not provide coverage for **any person** for Bodily Injury, Illness,

Disease, Death or Property Damage while in the water in connection with any diving activity, or

as a consequence of any diving activity."  (Emphasis supplied).  Thus, it is clear from the plain

language of this provision that it excludes claims brought by **any person** "as a consequence of

a diving activity" as the incident in this case.  Thus, we need not consider the intent of the parties.

---

[6] "BC" is a buoyancy control device used by scuba divers.  *See* In the Matter of the Complaint of
Illusions Holdings, Inc., 78 F.Supp. 2d 238 (S.D.N.Y. 1999).

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 22

Nonetheless, if for the sake of the argument we were to interpret this exclusion according to plaintiff (excluding from coverage only those claims brought by the diver), the interpretation would be unreasonable.  To accept plaintiff's interpretation of the exclusion would mean the insured would be covered depending on who makes the claim (diver vs. others) and not for the incident itself.[7]  This would clearly defeat the purpose of the policy for which the insured purchased it, to wit, provide financial protection for losses covered within the policy.  In this case, as previously explained, the Policy does not cover claims brought by any person as a consequence of a diving activity.

In view of the foregoing, it is recommended ING's Motion for Summary Judgment be **GRANTED** and all claims against ING be **DISMISSED with prejudice**.[8]

## V. CONCLUSION

In light of the above, it is hereby recommended the Motion for Summary Judgment filed by the Dive Shop and the Cantwells (Docket No. 16) be **DENIED** without prejudice.

In addition, it is recommended ING's Motion for Summary Judgment (Docket No. 26) be **GRANTED** and all claims against ING be **DISMISSED with prejudice**.

Finally, it is recommended that Dockets 44, 45 and 55 be **STRICKEN** from the record, for failure to comply with Local Rule 7.1 (c).

---

[7] Co-defendants argue the Policy in this case is "risk" specific rather than "claimant" specific.  Plaintiff argues otherwise.

[8] In light of our recommendation, there is no need for us to consider ING's un-seaworthiness argument which was made in the alternative.  (Docket No. 53, p. 11).

Paul Sylva v. Culebra Dive Shop, et al.,
Civil No. 04-1646 (JAG)
Report and Recommendation
Page No. 23

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO RECOMMENDED.

San Juan, Puerto Rico, this 2nd day of August of 2005.

s/**CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED   STATES   MAGISTRATE   JUDGE**